# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JUNE 13, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0120-WC

SPENCER COUNTY FISCAL COURT                   APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2022-CA-0802
WORKERS' COMPENSATION BOARD
NO. WC-2020-90644

GARY DAY; HONORABLE JONATHAN          APPELLEES
WEATHERBY, ADMINISTRATIVE LAW
JUDGE; AND WORKERS' COMPENSATION
BOARD

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

The Spencer County Fiscal Court (Spencer County) appeals from an Administrative Law Judge's (ALJ) interlocutory order awarding temporary total disability benefits and medical benefits. The Workers' Compensation Board dismissed Spencer County's appeal, and the Court of Appeals affirmed the Board. Because the ALJ's order does not meet the requirements of a final and appealable order, we affirm the Court of Appeals.

## FACTS AND BACKGROUND

In December 2019, Gary Day suffered a bilateral shoulder injury while working as a mechanic for Spencer County. Day, over 60 years old at the time,

regularly maintained police cars and ambulances for Spencer County and injured his shoulders while removing a tire from an ambulance. Day testified that when he removed the tire from the ambulance and bore its weight, he felt both of his shoulders "pop" and he dropped the tire. Day continued to work for Spencer County, performing his customary duties, save heavy lifting, until May 2020 when he underwent surgery on his right shoulder. At some point following the injury, Day notified Spencer County and it began paying Day $641.94 per week in temporary total disability (TTD) income benefits from May 26, 2020, to February 23, 2021, for a total of $25,218.38. Spencer County also paid Day's medical expenses in the amount of $30,400.95. Shortly after Spencer County terminated Day's receipt of income benefits, Day filed an Application for Resolution of Claim with the Kentucky Department of Workers' Claims which serves as the basis for this appeal.

In April 2021, Day's claim was assigned to an ALJ and scheduled for a telephonic benefit review conference (BRC). Following the BRC, the ALJ issued a BRC Order and Memorandum (BRC Order) which listed as among the contested issues between the parties, "TTD" and "benefits per KRS 342.730."[1] The ALJ's BRC Order also scheduled the case for a later hearing on the contested issues.

---

[1] Titled in part, "Determination of income benefits for disability," KRS 342.730 outlines the criteria for calculating what amount of income benefits an employee is entitled to, dependent in part on whether he is permanently partially disabled, temporarily totally disabled, or permanently totally disabled.

2

In its brief to the ALJ following the hearing, Spencer County argued that Day did not sustain a work-related injury to his shoulders in December, but rather had a pre-existing bilateral shoulder condition that caused his injury. Spencer County alleged that Day had concealed the fact that he had been receiving treatments on his shoulders for nearly a year prior to his alleged work-related injury. Accordingly, Spencer County asserted that Day was not entitled to any of the TTD benefits that had been paid to him. However, to the extent that the ALJ believed Day had, in fact, sustained a work-related injury, Spencer County argued that the ALJ should find that Day reached maximum medical improvement (MMI) on February 22, 2021, and that Day should be assigned a 0% permanent impairment rating as to his right shoulder and a 6% permanent impairment rating as to his left shoulder.

Day did testify that he had been receiving medical treatment to his shoulders, but argued in his brief to the ALJ that his December 2019 incident involving the ambulance tire was the cause of his bilateral shoulder injury. Like Spencer County, Day acknowledged in his brief that he reached MMI on February 22, 2021. However, Day argued that the ALJ should find that he has a 14% permanent impairment rating as a result of his injury.

After the parties' hearing and all briefing had concluded, the ALJ issued an Interlocutory Opinion and Order in which he concluded that Day had indeed sustained a work-related injury, but that he had not yet reached MMI. The ALJ rested his conclusion as to MMI on the medical opinions of Dr. Frank Burke and Dr. Frank Bonnarens, who both conducted independent medical

3

examinations of Day's injury. The ALJ noted that Dr. Burke had "concern[s]" regarding Day's ongoing left shoulder issues and that Dr. Bonnarens shared similar concerns. It was Dr. Bonnarens, however, who opined that Day had yet to reach MMI. He specifically stated in his report that, "At present, Plaintiff appears to have sustained a recurrent left shoulder rotator cuff tear, and as such is not at MMI." Based upon that evidence, the ALJ deferred the parties' desired decision regarding permanent disability rating and income benefits and placed Day's claim into abeyance pending a finding of MMI. The ALJ also ordered that Day was entitled to further TTD benefits until he reached MMI or returned to work.

Unhappy with the ALJ's interlocutory order, Spencer County filed two sequential Petitions for Reconsideration and argued, among other things, that the ALJ had exceeded his authority in *sua sponte* raising the issue of interlocutory relief, that the ALJ had failed to make requisite findings of irreparable harm before granting such relief, and that the ALJ had made several patent errors in his analysis. The ALJ denied both petitions, and Spencer County appealed to the Board. The Board concluded that the ALJ's Opinion and Order was interlocutory and unappealable, dismissed Spencer County's appeal, and remanded to the ALJ for further proceedings. Spencer County appealed to the Court of Appeals, which affirmed the Board. This appeal followed.

4

**ANALYSIS**

## I. The ALJ's interlocutory order awarding continued TTD benefits is not final and appealable.

Spencer County argues to this Court that the ALJ's order awarding TTD benefits should be subject to an immediate appeal. This Court concludes that the ALJ's order did not meet the requirements of a final order as referenced in 803 Kentucky Administrative Regulation (KAR) 25:010 § 22(2), and also as stated in Kentucky Rule of Civil Procedure (CR) 54.02, and is, therefore, not appealable.

A party before an ALJ may only appeal the ALJ's order or award to the Workers' Compensation Board "in accordance with administrative regulations promulgated by the commissioner[.]" KRS 342.285(1). The regulations governing workers' compensation permit appeals to the Board only from a "final award, order, or decision" of the ALJ. 803 KAR 25:010 § 22(2)(a). The regulations further state that "a final award, order, or decision shall be determined in accordance with Civil Rule 54.02(1) and (2)." *Id.* § 22(2)(b). CR 54.02 states in full:

> (1) When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may grant a final judgment upon one or more but less than all of the claims or parties only upon a determination that there is no just reason for delay. The judgment shall recite such determination and shall recite that the judgment is final. In the absence of such recital, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, *and the order or other form of decision is interlocutory and subject to revision at any time before*

5

> *the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.*
>
> (2) When the remaining claim or claims in a multiple claim action are disposed of by judgment, that judgment shall be deemed to readjudicate finally as of that date and in the same terms all prior interlocutory orders and judgments determining claims which are not specifically disposed of in such final judgment.

(emphasis added).

Thus, to qualify as final and appealable, the ALJ's order awarding TTD benefits to Day must have (1) recited that its judgment was final and there was no just reason for delay, or (2) adjudicated all the claims or the rights and liabilities of all the parties, effectively terminating the action. Here, the ALJ's order fulfilled neither requirement; it did not include a recitation of finality, and it explicitly abated Day's claim for permanent disability benefits. Spencer County concedes as much in its brief. Accordingly, pursuant to the regulations, that can only mean that the ALJ's order "is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." CR 54.02(1). The very nature of open-ended TTD benefits, awarded for an indefinite period as opposed to a fixed period, necessarily makes such an award interlocutory, because the rights and liabilities of the parties will not be definitively settled until that period of indefinite relief has ended. In fact, this Court has repeatedly stated that awards of interlocutory TTD benefits are not final and appealable. *Ramada Inn v. Thomas*, 892 S.W.2d 593, 594 (Ky. 1995); *KI USA Corp. v. Hall*, 3 S.W.3d 355, 358–59 (Ky. 1999).

6

Spencer County acknowledges that the ALJ's order does not include finality language and that the decision whether to include that language or not was squarely within the discretion of the ALJ. Despite these acknowledgements, Spencer County argues that the ALJ somehow abused his discretion in failing to include the necessary finality language in his interlocutory order. However, the ALJ, as gatekeeper of the case, is entrusted with wide latitude in discharging individual claims for appeal. Here, the interlocutory order's lack of finality language is fatal to any attempted appeal, and we see no abuse of discretion in the ALJ's refusal to include that language. *Hampton v. Intech Contracting, LLC*, 581 S.W.3d 27, 31–32 (Ky. 2019).

Spencer County also asserts that the ALJ's unwillingness to amend or vacate his interlocutory order somehow transforms that order into one that is final. However, like all interlocutory orders, the ALJ's award of TTD benefits remains "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties" regardless of the ALJ's rulings on the parties' Petitions for Reconsideration. CR 54.02(1).

Plainly, the ALJ's interlocutory order fails to meet the finality and appealability requirements of CR 54.02. We will address Spencer County's remaining arguments advocating for an immediate appeal below.

7

### a. The ALJ was within his authority to determine the threshold issue of whether Day had reached maximum medical improvement.

Spencer County argues to this Court that the ALJ exceeded his authority under the administrative regulations when he issued findings that Day had yet to reach MMI and awarded interlocutory TTD benefits. According to Spencer County, any actions taken by the ALJ in excess of his authority should be subject to an immediate appeal. Because the ALJ's BRC Order clearly and broadly listed "TTD" as a contested issue, we conclude the ALJ acted well within his authority when he decided whether Day had reached MMI.

A BRC is an "informal" proceeding whereby the parties and ALJ attempt to narrow the issues in dispute so as to "expedite the processing of the claim and to avoid if possible the need for a hearing." 803 KAR 25:010 § 13(1)–(2). If the parties have not reached agreement on all issues at the conclusion of the BRC, the ALJ shall prepare a final BRC Order which memorializes the parties' stipulations and remaining contested issues. *Id.* § 13(11). As the informal nature of the BRC suggests, an ALJ's BRC Order is perhaps the only record of what has transpired during a BRC and what issues are stipulated or remain contested between the parties. *See Id.* § 13(7) ("A transcript of the BRC shall not be made."). Following the BRC, the regulations mandate that "[o]nly contested issues shall be the subject of further proceedings." *Id.* § 13(12). This Court has previously stated that "[a]n ALJ is bound by the parties' voluntary stipulations" memorialized in the BRC Order. *Ford Motor Co. v. Duckworth*, 615 S.W.3d 26, 33 (Ky. 2021) (citing *Hale v. CDR Operations, Inc.*, 474 S.W.3d 129,

138 (Ky. 2015)). It follows that where the ALJ's BRC Order does not list an issue as being stipulated, that issue is "subject to further proceedings" and the ALJ is within his authority to consider it. *Id.* at 33. We have further compared the ALJ's BRC memorandum memorializing the stipulated and contested issues to "a contract from which a party may not be released without a showing of cause." *Hale,* 474 S.W.3d at 139.

Just prior to the parties' BRC in this case, Spencer County tendered a proposed BRC Order in which it specifically listed as among the contested issues, "overpayment of TTD as to rate and duration" and "[p]ermanent income benefits per KRS 342.730." The record reveals that Spencer County had also previously filed a Statement of Proposed Stipulations and Notice of Contested Issues in which it listed as contested issues, "Permanent injury v. temporary exacerbation," "Overpayment of TTD," and "Extent and duration of the Plaintiff's alleged injury." Upon the conclusion of the BRC, the ALJ prepared his definitive BRC Order in which he explicitly listed as among the contested issues "benefits per KRS 342.730" and "TTD." The presence of these two broad issues listed on the ALJ's BRC Order clearly authorized the ALJ to later determine the threshold issue of whether Day had yet to reach MMI.

Faced with the issue of resolving Day's entitlement to income benefits for disability, including TTD benefits, the ALJ had to determine whether Day had reached MMI. This a basic tenet of workers' compensation law because "'[t]emporary total disability' means the condition of an employee who has not reached *maximum medical improvement* from an injury and has not reached a

9

level of improvement that would permit a return to employment[.]" KRS 342.0011(11)(a) (emphasis added). "MMI refers to the time at which a worker's condition stabilizes so that any impairment may reasonably be viewed as being permanent," as opposed to temporary. *Tokico (USA), Inc. v. Kelly*, 281 S.W.3d 771, 775-76 (Ky. 2009) (citing American Medical Association, GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT (5th ed. 2001)). Simply, an employee cannot be entitled to TTD benefits if he has reached MMI, and he is only entitled to those benefits until he reaches MMI, or he is released to return to work that is "customary or that he was performing at the time of his injury." *Cent. Ky. Steel v. Wise*, 19 S.W.3d 657, 659 (Ky. 2000). Therefore, whether Day had reached MMI was a necessary finding the ALJ had to make before he could make any determination as to TTD benefits.

As evidenced by the ALJ's BRC Order, Spencer County's prior filings, and the parties' briefs to the ALJ, the parties also clearly contested Day's entitlement to permanent disability income benefits. As with TTD benefits, the ALJ could not make a determination as to permanent disability benefits without first making a finding that Day had reached MMI, because "[i]mpairment is considered to be permanent 'when it has reached maximum medical improvement[.]'" *Colwell v. Dresser Instrument Div.*, 217 S.W.3d 213, 217 (Ky. 2006) (quoting American Medical Association's, GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT (5th ed.)).

Even without such clear evidence that the ALJ was authorized to make a determination as to whether Day had yet to reach MMI, this Court has

10

previously endorsed the principle that some workers' compensation issues may be adequately preserved for the ALJ's review when they are encompassed within other issues that are clearly contested. *See Sidney Coal Co., Inc./Clean Energy Mining Co. v. Huffman*, 233 S.W.3d 710, 713–14 (Ky. 2007). Here, per its own proposed BRC Order, Spencer County also clearly sought to contest "overpayment of TTD as to rate and duration." Even if Day's entitlement to income disability benefits and MMI were not explicitly preserved in the ALJ's BRC Order, this argument surely placed them before the ALJ. We further observe that the narrow issue of MMI was not listed among the stipulated issues memorialized in the ALJ's BRC Order and, therefore, he was not precluded from considering it. Accordingly, faced with the ALJ's BRC Order that clearly and broadly lists "TTD" and "benefits per KRS 342.730" among the contested issues, and does not list MMI among the stipulated issues, this Court cannot say that the ALJ exceeded his authority in making a determination as to whether Day had yet to reach MMI. We express no opinion as to the validity of the ALJ's substantive findings, as that is not presently before us.

We would be remiss if we also did not seek to distinguish our own prior holding in *Hutchins v. Summa Technology/Ken-Mar*, No. 2005-SC-0734-WC, 2006 WL 1652575 (Ky. June 15, 2006). In that unpublished opinion, we held that an ALJ exceeded his statutory authority in deciding the claimant's entitlement to interlocutory TTD benefits and whether he had reached MMI, where no such issues were ever memorialized in the ALJ's BRC Order.

11

*Hutchins*, 2006 WL 1652575, *5. We must emphasize however, that the ALJ's BRC Order in the present case clearly and broadly lists "TTD" and "benefits per KRS 342.730" among the contested issues, and therefore, this case is distinguishable from *Hutchins*.

While an ALJ's BRC Order does maintain the gravity of contract, the regulatory framework governing adjudication of workers' compensation claims should not be construed as so rigid as to preclude the ALJ from exercising his discretion in identifying what issues are before him. Obviously, however, the best practice for any party that seeks to limit the scope of the ALJ's authority to decide an issue is to diligently advocate for an explicit stipulation or for the addition of limiting language which narrows the portion of the ALJ's BRC Order that memorializes the contested issues.

### b. Any defects in the procedure underlying the ALJ's interlocutory order do not make it final and appealable.

Spencer County further argues that the ALJ's failure to issue his order awarding interlocutory relief in accordance with the procedural requirements of 803 KAR 25:010 § 12 ("Interlocutory Relief") should permit an immediate appeal of his interlocutory order. Faced with a procedural situation not squarely contemplated by the regulations, we conclude that any alleged noncompliance with these inapplicable regulations cannot render the ALJ's order final and appealable.

803 KAR 25:010 § 12(1) authorizes parties to *request* interlocutory relief like TTD benefits, medical benefits, or rehabilitation services "at the time of the initial claim application or by motion[.]" Subsections 12(2) and 12(3) then set

12

forth varying procedures the ALJ and parties shall follow in adjudicating the request for interlocutory relief, dependent on when the party requested the relief (before, after, or with his application for resolution of the claim). If a party requests interlocutory relief "prior to or at the time the application for resolution of claim is filed," the claim for interlocutory relief is assigned to an ALJ for the purpose of resolving that claim. *Id.* § 12(2)(a). The regulations require that the claimant's underlying claim then be reassigned for resolution by another ALJ. *Id.* § 12(2)(e)–(f). Should a party request interlocutory relief by motion, after his underlying claim has already been assigned to an ALJ, that ALJ must refer the claim for interlocutory relief for assignment to a different ALJ "for the sole purpose of considering the request for interlocutory relief." *Id.* § 12(3)(a). The impetus of these regulations seems to be to ensure that one ALJ does not decide both a request for interlocutory relief and the claimant's underlying claim. However, a review of these regulations reveals that they do not contemplate the procedural situation before this Court today—one in which an ALJ who is adjudicating a claim for income benefits has heard all of the evidence in the case, and then determines that interlocutory relief is necessary, absent a request from a party. Accordingly, strict compliance with this portion of the regulations would have been impossible, and any lack of compliance cannot render the ALJ's inherently interlocutory award final and appealable. To hold otherwise would be to invite an absurd result as described below.

Here, faced with evidence that he believed necessitated an award of interlocutory TTD benefits, the ALJ attempted to comply with the relevant

13

regulations as if his interlocutory order had been requested prior to or at the time Day filed his Application for Resolution of Claim, pursuant to subsection 12(2)(f). We hold this solution amenable. As contemplated in subsection 12(2)(f), the ALJ placed Day's claim in abeyance and ordered that Day provide a status report on his injury every 60 days for as long as his claim remained in abeyance. This action clearly sought to alleviate any hardship that Spencer County might face resulting from the unappealable nature of the ALJ's interlocutory award. As we have previously suggested, it is the responsibility of the ALJ to closely monitor the status of the TTD recipient so that his claim may be finally resolved as soon as he reaches MMI. *Hall,* 3 S.W.3d at 358. To aid in the equitable management of such claims, we note that Spencer County retained the ability to move the ALJ to terminate his interlocutory order and remove Day's claim from abeyance at any time upon a showing of cause. 803 KAR 25:010 § 12(2)(f).

Perhaps the ALJ could have, pursuant to the procedure prescribed by 803 KAR 25:010 § 12(3)(a), treated the situation as if Day had requested interlocutory relief by motion and then referred the case to the Commissioner of the Department of Workers' Claims to transfer the case to a different ALJ solely to consider the question of interlocutory relief. However, considering the ALJ had already heard all of the evidence in this case, to do so would have been clearly contrary to administrative efficiency, and at significant expense to the parties.

It is apparent that the regulations governing the granting of interlocutory relief do not contemplate the exact situation before the ALJ in this case. Any alleged noncompliance with those regulations cannot render the ALJ's resulting order final and appealable. If the promulgator of these regulations disagrees with this Court's interpretation of the regulations, we welcome any and all regulatory changes to the contrary. Addressing this apparent gap in the regulations would be advisable.

### c. The ALJ's failure to make requisite findings of fact cannot make his interlocutory order final and appealable.

Spencer County further argues that the ALJ's failure to make explicit findings that Day would "suffer immediate and irreparable injury, loss, or damage pending a final decision on the application" before ordering interlocutory relief should permit an immediate interlocutory appeal. 803 KAR 25:010 § 12(4)(a) requires that a requesting party establish his entitlement to interlocutory relief by producing evidence that demonstrates (1) he is eligible for such relief under KRS Chapter 342, (2) that he will suffer "immediate and irreparable injury, loss, or damage pending a final decision on the application," if interlocutory relief is not granted, and (3) that he is likely to succeed on the merits of his underlying claim based upon the evidence introduced by the parties. While it is evident that the ALJ did not include explicit findings in his interlocutory order that Day had met his burden of proof under 803 KAR 25:010 § 12(4)(a), like any other challenge to an interlocutory order, Spencer County's proper remedy awaits on appeal. If what Spencer County alleges is true and "[t]here is no proof to suggest that Mr. Day has been or will be unable

15

to provide for the necessities of life if TTD is not initiated," Spencer County may of course appeal the ALJ's interlocutory award of TTD benefits when the ALJ's order becomes final and appealable, pursuant to CR 54.02(2). ("When the remaining claim or claims in [the] multiple claim action are disposed of by judgment[.]")

### d. The collateral order doctrine does not permit an immediate appeal of the ALJ's interlocutory order.

Spencer County finally argues that the collateral order doctrine should permit an immediate appeal of the ALJ's interlocutory order. We disagree. The collateral order doctrine is a judicially created exception to the general rule that appeals shall only be taken from final judgments or orders. *Childers v. Albright*, 636 S.W.3d 523, 526 (Ky. 2021). In first adopting the doctrine, which originated with the federal courts, this Court couched the doctrine as an exception to its own CR 54.01. *Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 886 (Ky. 2009) ("CR 54.01 limits 'appealable judgment[s]' to 'final order[s] adjudicating all the rights of all the parties in an action or proceeding[.]' There are exceptions to this final judgment rule, however."). Considering the regulations' express reference to CR 54 in 803 KAR 25:010 § 22(2)(b), we assume the promulgator of the regulations intended that the appealability of ALJ decisions to the Board be determined utilizing this Court's prior interpretations of CR 54, including the collateral order doctrine. That is not to say, however, that the doctrine will be applicable to other administrative appeals.

16

Nonetheless, Spencer County's argument must fail because the interlocutory order in question fails to meet all three elements of the collateral order doctrine. Pursuant to the doctrine, "the interlocutory order must (1) conclusively decide an important issue separate from the merits of the case; (2) be effectively unreviewable following final judgment; *and* (3) involve a substantial public interest that would be imperiled absent an immediate appeal." *Sheets v. Ford Motor Co.*, 626 S.W.3d 594, 599 (Ky. 2021) (emphasis added). In regard to the first element, this Court concludes that the ALJ's interlocutory order does not decide any issues separate from the merits of the case. Rather, the ALJ's order decided *only* the merits of the case, i.e., what benefits, if any, Spencer County owed to Day. The ALJ's interlocutory order fails to meet the first element of the collateral order doctrine. We need not address the other two elements of the doctrine because compliance with all three elements is a precondition to applicability. The collateral order doctrine does not apply to permit an immediate appeal from the ALJ's interlocutory order.

## CONCLUSION

The ALJ's interlocutory order does not meet the requirements of a final order as prescribed in CR 54.02. The order did not recite that its judgment was final and there was no just reason for delay, and it did not adjudicate all the claims or the rights and liabilities of all the parties, effectively terminating the action.

17

For those reasons, we conclude that the ALJ's March 16, 2022, order is interlocutory and not appealable. Accordingly, we affirm the Court of Appeals.

All sitting. VanMeter, C.J.; Bisig, Keller, Lambert, Nickell and Thompson, JJ., concur. Conley, J., dissents by separate opinion.

CONLEY, J., DISSENTING: Respectfully, I dissent. My understanding of the relevant regulations is that an interlocutory order of temporary benefits can only be granted when one of two procedures are followed. Moreover, the regulations clearly state that an ALJ who does award interlocutory relief of temporary benefits will be different from the ALJ who gives an award on the underlying compensation claims. Because neither were followed here, I believe the award is appealable. An ALJ acting outside the regulations is obviously acting in an arbitrary manner. To conclude that the Worker's Compensation Board and the appellate courts of the Commonwealth are powerless to reverse an ALJ who acts beyond the authority granted him in the regulations is illogical.

There are two sets of procedures that concern this case. One is the procedure for adjudicating a claim for compensation benefits. The second is adjudicating a request for interlocutory relief. They are different; not merely in the procedure to be followed, but in the authority of an ALJ to make rulings on one issue over against the other. When adjudicating a claim for compensation benefits, that claim is assigned to an ALJ, who "may grant continuances or grant or deny any benefits afforded under this chapter, including interlocutory relief, according to criteria established in administrative regulations

18

promulgated by the commissioner." KRS 342.275(2). After the submission of evidence, a Benefits Review Conference is held where the issues are winnowed between what is stipulated and contested. *Id;* 803 KAR 25:010 § 13. Only contested issues are preserved for resolution after a BRC. 803 KAR 20:010 § 13(12). After a final hearing, an award, decision, or order is entered with findings of fact and conclusions of law on the claim and "any other matters pertinent to the question at issue[.]" *Id.* After this award, decision, or order is entered it is subject to a petition for reconsideration to correct patent errors. KRS 342.281. An award pursuant to this statutory procedure is conclusive as to all questions of fact but may be appealed to the Worker's Compensation Board. KRS 342.285. This appeal may challenge an award for, among other things, an ALJ acting without or in excess of his authority, KRS 342.285(2)(a); clear error, *Id.* at (2)(d); or an abuse of discretion for arbitrariness, *Id.* at (2)(e). The determination of the Board is then subject to review by the Court of Appeals. RAP 49; KRS 342.290. This was the procedure followed by the ALJ in this case.

A different set of procedures is contemplated for requests for interlocutory relief; indeed, there are two different procedures depending on the timing of the request. 803 KAR 25:010 § 12 sets out the specific procedures to adjudicate requests for interlocutory relief. First and foremost, it authorizes that a claimant "may seek interlocutory relief at the time of the initial claim application or by motion . . . ." 803 KAR 25:010 § 12(1). Temporary total disability benefits may be awarded in a request for interlocutory relief. *Id.* at

19

(1)(a). When a request for interlocutory relief is made "prior to or at the time the application for resolution of claim is filed" then twenty days for response is allowed. *Id.* at (2). The specific request for interlocutory relief is then referred to an ALJ. *Id.* at (2)(a). When a request for interlocutory relief is made at this stage, an assignment to an ALJ on any other issues, i.e., the underlying compensation claim, is prohibited, absent a showing of irreparable harm. *Id.* at (6). A hearing on the request must be had within thirty-five days after assignment. *Id.* at (2)(b). A ruling is required twenty days after the hearing. *Id.* at 2(c).[2] If the ALJ denies the request for interlocutory relief, then the claim is *reassigned* to a different ALJ to adjudicate the underlying claims. *Id.* at 2(e). If the request is granted, however, then the underlying claim may be placed in abeyance and reporting deadlines to monitor the claimant are instituted. *Id.* at 2(f).

A different procedure is mandated if the underlying claim for benefits has already been assigned to an ALJ, and the claimant files a motion requesting interlocutory relief. *Id.* at (3)(a). In that circumstance, the ALJ must issue an order within ten days after receiving the request ordering the opposing party to file a response within twenty days. *Id.* The ALJ must then refer the specific motion requesting interlocutory relief to the commissioner for *reassignment* to a different ALJ solely to consider the interlocutory request. *Id.* The temporary

---

[2] A hearing can be dispensed with, however, at which point a ruling must be issued twenty days after the response or twenty days after the response is due for submission, if no response is filed. 803 KAR 25:010 § 12(2)(d).

ALJ may then conduct a hearing within thirty-five days after the response is filed. *Id.* at (3)(b). He must then issue a ruling twenty days after the hearing. *Id.* at (3)(c).[3]

In all requests for interlocutory relief, it may only be granted upon a showing of eligibility under KRS Chapter 342; immediate and irreparable harm during the pendency of the claim adjudication; and likelihood of success on the merits based upon the evidence. *Id.* at (4)(a)1-3.

I recognize the authority of *Transit Authority of River City v. Saling*, 774 S.W.2d 468 (Ky. App. 1989) and its affirmation by this Court in *Ramada Inn v. Thomas*, 892 S.W.2d 593 (Ky. 1995). But my reading of the regulations and case law convince me that only when an ALJ's interlocutory relief award is in conformity with the procedure set out in 803 KAR 25:010 § 12 is there no appeal allowed. In a case in which the regulatory procedure for interlocutory relief was wholly ignored, and the interlocutory TTD benefits were awarded pursuant to the statutory framework that governed adjudication of the underlying claim, then an appeal is allowed.

"[I]t is axiomatic that failure of an administrative agency to follow its own rule or regulation generally is *per se* arbitrary and capricious." *Com., Transp. Cab. v. Weinberg*, 150 S.W.3d 75, 77 (Ky. App. 2004). The regulatory framework not only sets out different procedures for adjudicating a request for interlocutory relief separate from adjudicating a claim for compensation

---

[3] This hearing may be waived, and a decision rendered twenty days after the response is filed or should have been filed. 803 KAR 25:010 § 12(3)(d).

21

benefits, but it mandates that an ALJ who makes a determination on a request for interlocutory relief will be different from the ALJ who will resolve the underlying compensation claim. 803 KAR 25:010 § 12(2)(e) and (3)(a). Therefore, an ALJ who has been assigned the case to adjudicate the underlying claim cannot *sua sponte* raise the issue of interlocutory TTD benefits nor otherwise convert the claim into a request for interlocutory relief. *Hagan v. Farris*, 807 S.W.2d 488, 490 (Ky. 1991) ("An agency must be bound by the regulations it promulgates.").

The facts of this case disclose that Day never requested or made a motion for interlocutory relief. That is undisputed. Day never made a claim for additional temporary TTD benefits. That is undisputed. The ALJ never made a finding of fact that Day would be irreparably harmed by not awarding interlocutory relief, because Day had never made such a request or argument. That is undisputed. The Court's rationale that the ALJ checked the "TTD" box in his Bench Conference Review memorandum therefore all potential TTD issues can be adjudicated by him is a deliberate obfuscation of the record. The ALJ essentially has *carte blanche* authority to put issues not otherwise claimed or argued for by the parties in dispute merely by checking a box, without any regard to the context as to why that box was checked? The reason the "TTD" box was checked by the ALJ was because Spencer County was challenging whether Day suffered a work-related injury, and consequently, whether he should have received the TTD benefits he had heretofore acquired. There was no claim in any document or briefing filed by Day that he was entitled to

22

*additional* TTD benefits. There was no claim by Day that he had not reached MMI. That Day had reached MMI was a fact agreed upon by the parties. The ALJ is bound by the arguments and issues presented by the parties. 803 KAR 20:010 § 13(12). I do not believe, therefore, that the ALJ was empowered to conclude that Day was not at MMI, much less that he could order interlocutory relief contrary to the regulatory procedures mandated to make that determination. The ALJ was restricted solely to determining the percentage of MMI Day had reached. He failed to do so.

Finally, the Court makes much of the fact that it believes the regulations do not govern the issue precisely before the Court. Once again, it would not be an issue if the ALJ had confined himself to the issues the parties were arguing. Regardless, the Court's rationale that the regulations do not contemplate the issue before us—the regulations literally do not regulate—therefore we must defer to whatever the ALJ decides to do is a dangerous precedent. If the ALJ has no law directing his action then that action is, by definition, lawless— arbitrary. Are the courts of this Commonwealth truly helpless against arbitrary action, merely because that arbitrary action doesn't declare itself final and appealable; nay more, that it cloaks itself with unfinality and unappealability to escape review? This decision will incentivize future administrators when crafting regulations to be intentionally general and vague in order to demand deference on the purely legal question of whether the ALJ acted outside the regulatory framework.

23

Because the ALJ did not follow the procedures for interlocutory relief under 803 KAR 25:010 § 12, but instead made his award pursuant to the procedures for claim adjudication, the award should have been considered appealable under KRS 342.285 to the Board, and reviewable by the Court of Appeals pursuant to RAP 49 and KRS 342.290. To hold otherwise places not just the courts but the Worker's Compensation Board in the peculiar position of being unable to reverse and correct an ALJ who enters an interlocutory award of TTD benefits outside the mandatory procedural framework for interlocutory relief. Because the so-called "interlocutory" award was made without following the correct regulatory procedures, the ALJ manifestly acted without conformity to law and in an arbitrary and capricious manner. KRS 342.285(2)(c) and (e); *Weinberg*, 150 S.W.3d at 77. Additionally, even following the procedure for claim adjudication, a claim for additional TTD benefits was not preserved at the BRC and Day did not argue that he had not reached maximum medical improvement. Thus, the ALJ acted without or in excess of his authority by raising the issue *sua sponte. Id.* at (2)(a). I would reverse the Court of Appeals and remand to the ALJ to resolve the preserved, underlying claims for compensation.

COUNSEL FOR APPELLANT:

Thomas L. Ferreri
Christopher M. Mayer
Ferreri Partners, PLLC

COUNSEL FOR APPELLEE, GARY DAY:

Timothy J. Wilson
Michael Thomas Kunjoo
Wilson & McQueen

APPELLEE, ADMINISTRATIVE LAW JUDGE:

Hon. Jonathan Weatherby

COUNSEL FOR APPELLEE, WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey
Chairman